IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMNESHIA A. BURGIN,

          Plaintiff,

    v.                               Case No. 13-2286-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

          Defendant.


MEMORANDUM AND ORDER

      This is an action reviewing the final decision of the Commissioner of

Social Security which denied plaintiff supplemental security income

payments. The matter has been fully briefed by the parties.

## I. General legal standards

      The court's standard of review is set forth in 42 U.S.C. § 405(g), which

provides that "the findings of the Commissioner as to any fact, if supported

by substantial evidence, shall be conclusive." The court should review the

Commissioner's decision to determine only whether the decision was

supported by substantial evidence in the record as a whole, and whether the

Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d

983, 984 (10th Cir. 1994). When supported by substantial evidence, the

Commissioner's findings are conclusive and must be affirmed. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The claimant shall be determined to be under a disability only if he can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U .S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.

At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work. The claimant is determined not to be disabled unless she shows she cannot perform her previous work. The fifth step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity to perform other work that exists in the national economy, given her age, education, and work experience. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Thompson v. Sullivan,* 987

F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487.

## II. Procedural History

Plaintiff was found disabled as a minor in 2002 because she met the relevant listing for mild mental retardation. (Tr. 19, 82, 373-78.). But under the Social Security Act, children who are receiving supplemental security income when they reach age eighteen must have their disability redetermined under the disability rules used for adults. *See* § 1614(a)(3)(H). Thus when Plaintiff reached age eighteen, her case was reviewed under the five-step sequential evaluation process stated above.

At step one, the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since October 15, 2008. The ALJ found at step two that the plaintiff has the severe impairment of mild mental retardation, but found at step three that this impairment did not meet or equal the severity of a listed impairment. The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform other work at all exertional levels but could understand and follow only simple instructions and perform work that required no reading (Tr. 23). The ALJ did not evaluate the Plaintiff under step four because she had no past relevant work. The ALJ found at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including work as a spool

winder, burr grinder, final assembler of optical goods, and stringer machine tender (Tr. 26). Thus the ALJ found she was no longer disabled. (Tr. 19, 80, 82.)

In this review, Plaintiff's claims of error focus upon the step three and RFC findings.

## Listing 12.05(C)

At step three, the Plaintiff has the burden of demonstrating that her impairments meet all of the specified medical criteria contained in a particular listing. *See Candelario v. Barnhart*, 166 Fed.Appx. 379, 382-83 (10th Cir. 2006). The standards for listed impairments were intentionally set high because they operate to cut off further inquiry relatively early in the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

To meet Listing 12.05, "Mental Retardation," a claimant must meet the "capsule definition" and one of the four severity prongs for mental retardation. Lax v. Astrue, 489 F.3d 1080, 1085 (10th Cir. 2007). The capsule definition states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1. The relevant severity prong, 12.05(C), requires the Plaintiff to show a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

5

Lax, 489 F.3d at 1085. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C).

The parties do not dispute Plaintiff's valid IQ scores within the required range or the onset of her mental retardation before age 22, but disagree about the additional limitation. The ALJ found that Plaintiff did not meet the requirements under this section because she lacked a physical or other mental impairment imposing an additional and significant work-related limitation of function. Tr. 22. "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *See Collins v. Chater*, 108 F.3d 341, 1997 WL 82480, at *1 (10th Cir. Feb. 27, 1997) (citations omitted). Plaintiff argues that her right knee deformity and asthma meet this requirement.

### Knee

Plaintiff alleges a long history of significant knee pain that precludes her from performing prolonged standing, walking, and sitting. The ALJ found:

> [Plaintiff] complained of knee pain which improved with Naprosyn, but the medication caused her to be drowsy. Her pain was in the lower pole of the patella and radiated around to the sides, bilaterally. It was worse after prolonged sitting or activity and was resolved with rest. X-ray of the right knee performed on March 11, 2010 showed no evidence of an acute fracture or malalignment. It showed likely non-ossifying fibroma in the distal femur.

Tr. 24.

The ALJ also relied on the report from Joe Noland, M.D., a consultative orthopedist, who examined Plaintiff in July of 2011. He found that Plaintiff reported pain since childhood but no specific injury. His examination showed Plaintiff was in no apparent distress. Her gait was normal and stable, and she was able to ambulate in a straight line (Tr. 24, 587). She had a full range of motion of both knees, and her right knee had a negative anterior and posterior drawer. (Tr. 547, 555). She had no tenderness in her infrapatellar surface, and no pain with internal and external rotation of the bilateral hips (Tr. 24, 587). He observed Plaintiff to be asymptomatic, but noted her pain could be consistent with patellar tendinitis. He described Plaintiff's knee as very stable and stated he would place no restrictions on her ability to engage in competitive employment (Tr. 24, 588).

Plaintiff alleges that she was limited in her ability to articulate her symptoms due to her mild mental retardation, but does not show any additional symptoms she could otherwise have conveyed to the physicians. She also suggests that Dr. Noland did not have any of her medical records, including an x-ray of her knee that revealed a lesion in the distal femoral metaphysic which was thought to be a nonossifying fibroma. (Tr. 551.) Yet Plaintiff has not shown that such a fibroma had any effect on her ability to perform basic work activities, and the medical records state that her pain was not in the area of her fibroma. Plaintiff additionally notes that her treating physicians at Truman Medical Center prescribed pain medications

7

and a knee wrap, instructed her to use ice and elevate her leg for additional pain relief, and considered aspirating her knee if she continued to experience pain. But the medications prescribed were merely ibuprofen or other NSAIDs, and no aspiration was allegedly done. Tr. 555. Given all the facts of record, the ALJ's finding that Plaintiff's right knee pain did not have more than slight or minimal effect on her ability to perform basic work activities is supported by substantial evidence.

### Asthma

Plaintiff also alleges that because of her asthma she needed to avoid dust, fumes, and cold air, which constitutes a significant work-related limitation. Plaintiff was diagnosed with asthma as a child and in 2009 had an exacerbation of symptoms for several days. Tr. 396, 412, 563-65. At that time, when Plaintiff was nine-years old, the doctor indicated her condition was likely mild and intermittent and that her exacerbation was a result of deconditioning due to poor diet and lack of exercise. Tr. 564. He encouraged Plaintiff to exercise, suggesting her asthma did not preclude physical activity. Tr. 564. At the hearing, Plaintiff testified that she had not been using her inhaler recently because she did not need it. Tr. 65.

Plaintiff agrees that the record shows only one documented exacerbation of her asthma symptoms. Given the isolated nature of that event, it is not indicative of significant limitations. Plaintiff contends that asthma necessarily limits a person's ability to work in an environment where

she would be exposed to dust, fumes, cold air and the like, constituting a work-related limitation which satisfies the second prong of listing § 12.05C. But in meeting that standard, "[t]he claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997) (quotation omitted). Instead, she must show the medical severity of her impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii); *Timmons v. Astrue*, 2009 WL 467588, 5 (W.D.Okla. 2009) (noting the Tenth Circuit has never determined that environmental limitations are significant for purposes of the second prong of listing 12.05(C); finding claimant's asthma imposed minimal limitations, *i.e.*, restriction to work which did not require exposure to environmental extremes of temperature and exposure to excessive amounts of dust, fumes, or gases). Substantial evidence supports the ALJ's finding that Plaintiff's asthma, whether viewed in isolation or in conjunction with her right knee pain, did not have more than a slight or minimal effect on her ability to perform basic work activities. Accordingly, the ALJ properly concluded that Plaintiff failed to meet her burden to meet Listing 12.05(C).

**Listing 12.05(D)**

To qualify under section D, a claimant must show a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in

maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(D). A "marked" limitation is one that is more than moderate but less than extreme. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00C. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis. *Id.*

Plaintiff does not allege that she had repeated episodes of decompensation. The ALJ found that Plaintiff had only mild restriction in activities of daily living, mild restriction in maintaining social functioning, and moderate difficulties with regard to concentration, persistence, or pace, Tr. 22-23. Plaintiff contends she has marked limitations in all three areas.

### Activities of Daily Living

"Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." Listed Impairments § 12.00(C)(1).

The ALJ found that Plaintiff was able to care for two small children and herself, cook using the microwave, clean, get her children dressed, shop, and attend a community college. Tr. 22.  Citing Exh. 13E. These findings are

supported by the evidence. *See e.g.*, Tr. 32, 331-38. *See also* Tr. 513-527 (the consulting psychologists both found mild restrictions in Plaintiff's ADL).

The ALJ also found that Plaintiff's mother saw Plaintiff two to three times a week and helped her by reading correspondence or instructions to her, paying her bills, and assisting with grocery shopping. In support of that finding, the ALJ cited Exhibit 12E (Tr. 322-41), a questionnaire that Plaintiff's mother completed when Plaintiff was living independently in an apartment with her two children. The ALJ found that Plaintiff was living independently, with the stated assistance, Tr. 24-25, but did not acknowledge evidence that she later had to move in with her family for support. Plaintiff's mother testified that after an undisclosed period of time, the landlord expressed concern about Plaintiff's reading problems and related her belief that Plaintiff could not live on her own, so Plaintiff moved in with family. Tr. 70. After Plaintiff did so, she was not fully responsible for the care of her children. Tr. 71-72. She often fed them then returned to her bedroom to watch television, isolating herself from the family except to call her children in for a nap. Tr. 71-72.

But even that evidence fails to show a marked limitation in Plaintiff's ADLs. *See Stokes v. Astrue*, 274 Fed.Appx. 675, 682 (10th Cir. 2008) (finding no marked limitation in ADLs where claimant was able to care for her personal needs, perform household chores, cook, read, shop and watch television); *Tyler v. Astrue*, No. 10-2326-EFM, 2011 WL 2433736, at *4 (D.

Kan. June 14, 2011) (affirming the finding of mild limitation in ADLs where the claimant graduated from high school and performed a wide variety of household chores). Substantial evidence supports the ALJ's finding that Plaintiff failed to show she has a marked restriction in her activities of daily living.

### Social Functioning

Social functioning refers to the claimant's ability to interact independently, appropriately, effectively and on a sustained basis with other individuals. Listed Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(2) (2012). Deficits in this area may be demonstrated by avoidance of interpersonal relationships or social isolation. *Id.* The ALJ considers the nature and overall degree of interference with function. *Id.*

Sufficient evidence shows that Plaintiff socializes with family and does not have significant difficulty getting along with family, friends, neighbors, or others. Tr. 22, 71, 309, 326, 336, 327, 328, 337, 464, 492-93, 500, 508, 514, 526, 535, 539, 540. Although Plaintiff was afraid of not being hired, this was because she could not read, not because of any social interaction problems. Tr. 23, 328. One of Plaintiff's teachers indicated that she had significant social problems, but others indicated that she had few or no difficulties interacting with and relating to others. Tr. 464, 492-93, 500, 508. The psychological consultants opined that Plaintiff did not have significant difficulty with social interaction. Tr. 25, 514, 539.

Plaintiff alleges that the psychological consultants are inconsistent with each other - one found Plaintiff to be mildly restricted in her social functioning and the other found her to be moderately limited in this area. But neither opines that the Plaintiff had *marked* restrictions in this area, and that is the relevant inquiry. *See* Tr. 513-527, 540.

Other evidence shows Plaintiff has some difficulty with social interaction. Plaintiff's special education coordinator noted that Plaintiff had trouble using adequate vocabulary and grammar to express thoughts in general conversations, and that she stayed to herself and did not interact or talk with other students. Tr. 463-64. She had difficulty making and keeping friends, following classroom rules, using appropriate language, and introducing and maintaining relevant and appropriate topics of conversation. Tr. 464. The reviewing consultant, after talking to Plaintiff's special education coordinator, concluded that Plaintiff gets along with people but mostly stays to herself and is a loner who can be easily manipulated by boys. Tr. 296, 524, 526. And Plaintiff's mother testified that Plaintiff's longstanding habit was to isolate herself even while at home. Tr. 71-72. Plaintiff was difficult to engage in conversation and did not understand some of the questions the hearing officer asked during the interview process, so needed additional time. Tr. 361.

Plaintiff also contends that the ALJ failed to address the opinion of the non-examining psychologist, Dr. Kravitz. But the ALJ's opinion expressly

13

addresses that opinion, see Tr. 25, and Dr. Kravitz's testimony related to this issue does not assist Plaintiff. He opined that Plaintiff had *moderate* restrictions of ADL, of social functioning, and of concentration, pace and persistence, and no decompensation so did not meet or equal a listing. Tr. 53. That opinion is consistent with the ALJ's finding that Plaintiff did not have a marked limitation in any of those areas – a finding that is supported by substantial evidence. *See Oldham v. Astrue,* 509 F.3d 1254, 1257-58 (10th Cir. 2007) (the Court's task is not to reweigh the evidence); *See Knight v. Colvin,* __ *F.3d* __, (10th Cir. June 24, 2014) (substantial evidence standard does not require a preponderance of the evidence).

### Concentration, Persistence or Pace

The Court finds it unnecessary to address the ALJ's finding that Plaintiff did not have marked difficulties with regard to concentration, persistence or pace since the Plaintiff has not shown marked difficulties in either of the two areas addressed above, as is necessary in this case. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(D). Substantial evidence thus supports the ALJ's finding that Plaintiff failed to meet the listing for § 12.05(D).

### RFC

Plaintiff also contends that the ALJ erred in assessing her RFC because he failed to include any limitations regarding her need for additional supervision or guidance in completing tasks. But those limitations were

recommended by Dr. Kravitz, see Tr. 46-47, 53-54, and were discounted by the ALJ. The record reflects Dr. Kravitz's testimony that the file he reviewed had no records after 2008, that his impression was based on what was in the file, and that it "was critical to know what she's been doing between 2008 and the present." Tr. 45.

The ALJ stated the reasons for disagreeing with Dr. Kravitz's opinion, and why he found the more recent third-party information and the opinions of the psychological consultants to be more reliable than Dr. Kravitz's opinion:

> As for opinion evidence, Dr. Kravitz, the medical expert, testified at the first hearing. He opined that he did not think the claimant was capable of sustaining competitive employment. The undersigned disagrees. Dr. Kravitz suggested obtaining third party information. The undersigned held a supplemental hearing during which the claimant's mother and a vocational expert testified. Additionally, teacher reports are included in the evidence of record. This information is third party information.
> The undersigned finds Exhibits 7F, B1F, and B2F, the opinions of the State agency psychological consultants[,] to be more reliable than the testimony of Dr. Kravitz. Social Security Ruling (SSR) 96-6p states that findings of fact made by State agency psychological consultants and other program psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources to be considered and weighed along with the medical evidence from other sources. In the instant case, the undersigned agrees with the State agency non-examining psychological consultant in Exhibits 7F, B1F, and B2F that the claimant has no other "severe" physical or mental impairment.

Tr. 25. *See* Exhibits 7F (Tr. 513-526, Dr. Keith Allen, PhD's opinion of mild ADL, moderate social, and moderate pace limitations); Exhibit B1F (Tr. 527-537, Dr. Edd Bucklew, PhD's opinion of mild ADL, mild social, and moderate

pace limitations); and Exhibit B2F (Tr. 538-540, Dr. Edd Bucklew, PhD's mental RFC assessment).

The ALJ followed Dr. Kravitz's suggestion by conducting a supplemental hearing at which he obtained information about Plaintiff's abilities and limitations from 2008–2011. Statements from Plaintiff and third parties indicated that she generally did not need special reminders to complete daily tasks. Tr. 307-09, 324-26, 333-35. And the consulting psychologists did not include any such restriction in their opinions. The Court finds ALJ's decision is supported by substantial evidence. See Tr. 458, 513-14, 538-39, 540.

Plaintiff also argues that the RFC should have included additional limitations based upon her social functioning. She suggests that because the ALJ relied on the opinions of the psychological consultants, he was required to adopt those opinions *in toto*, including Dr. Allen's finding that Plaintiff was moderately limited in her ability to interact with the general public and co-workers. But the regulations do not require a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *See Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ found only mild limitations in Plaintiff's social functioning. But even had he found "moderate difficulties" in social functioning in the "paragraph B" criteria, that finding would not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.

*See Beasley v. Colvin*, 520 Fed.Appx. 748, 754, 2013 WL 1443761, 5 (10th Cir. 2013). *See also* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996) (stating that "the [ALJ] must remember that the limitations identified in the 'paragraph B' … criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"); *DeFalco-Miller v. Colvin*, 520 Fed.Appx. 741, 747-748, 2013 WL 1406014, 5 (10th Cir. 2013) (finding no requirement that step three findings concerning the listings be incorporated into the RFC determination used in steps four and five); *Miller v. Astrue,* 2012 WL 1388706 at *5 (D.Colo. April 23, 2012) ("[T]he ALJ was not required to include in his assessment of plaintiff's RFC a moderate limitation in social functioning, merely because such a limitation was found for purposes of step three."), *aff'd,* 520 Fed.Appx. 741 (10th Cir. 2013) (citation and internal quotation marks omitted).

Here, the Plaintiff did not demonstrate marked limitations in social functioning. Although consulting psychologist Allen opined that Plaintiff had moderate social limitations, he did not suggest a need for workplace limitations related to her social functioning. The Court finds no error in the ALJ's formulating an RFC that did not include specific limitations regarding Plaintiff's social functioning.

Lastly, Plaintiff contends that the ALJ adopted the psychological consultants' opinions that she had moderate deficits in concentration,

persistence, or pace, but did not account for those deficits in Plaintiff's RFC or explain why not. SSR 96–8p requires that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § § 12.00(C)(3).

Dr. Bucklew opined that Plaintiff had moderate limitations in this area, yet his functional capacity assessment accounts for that mental limitation by stating only: "Claimant is able to remember, understand, and complete simple instructions with usual supervision, but she would be limited for complex or detailed instructions." Tr. 540. Dr. Allen also found that Plaintiff had moderate mental limitations in this area but concluded: "[Claimant is] capable of understanding and performing less demanding activities in a work like setting." He noted no other functional limitations flowing from any of Plaintiff's moderate mental limitations he found. The RFC accordingly limited Plaintiff to work that required her to understand and follow only simple instructions and that required no reading. The record does not reflect that this RFC conflicts with the medical source opinions, as it accounts for Plaintiff's moderate mental limitations in the same manner as did the consultants in their functional capacity assessments.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 5th  day of August, 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge